PEOPLE *v.* EARLY

1. INDICTMENT AND INFORMATION—MOTION TO QUASH—TIMELINESS—
   PRELIMINARY HEARING—TRANSCRIPT.

   A motion to quash an information is timely made if the
   transcript of the testimony given at the preliminary examina-
   tion is still unfiled.

2. CRIMINAL LAW—PRELIMINARY EXAMINATION TRANSCRIPT—UN-
   TIMELY FILED.

   An untimely filing of the transcript of the testimony given at
   the preliminary examination is reversible error only where
   there is a showing of prejudice.

3. INDICTMENT AND INFORMATION—MOTION TO QUASH—PRELIMINARY
   EXAMINATION—TRANSCRIPT—PREJUDICE.

   A motion to quash the information was properly denied even
   though the transcript of the testimony given at the prelim-
   inary examination was not filed contemporaneously with the
   filing of the information where the transcript was filed more
   than a month before the trial commenced and was used to
   prepare pre-trial motions, where the motion to quash was not
   made until a month after the transcript had been filed, and
   where the defendant did not allege any prejudice by the
   untimely filing of the transcript.

4. CRIMINAL LAW—DEFENSES—INSANITY—PSYCHIATRIC EXAMINA-
   TION.

   A court's ordering the defendant in a criminal case to be ex-
   amined by the people's psychiatrist was not error and did

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 41 Am Jur 2d, Indictment and Information § 281.
[2] 21 Am Jur 2d, Criminal Law § 442 *et seq.*
[4, 5] 21 Am Jur 2d, Criminal Law § 48.
   Validity and construction of statutes providing for psychiatric
   examination of accused to determine mental condition.   32 ALR
   2d 434.

not *per se* violate the defendant's constitutional rights where the defendant had raised his insanity as a defense to a charge of crime and where the court restricted the psychiatric testimony to the issue of the defendant's sanity.

5. Criminal Law—Defenses—Insanity—Psychiatric Examination—Notice to Counsel.

Failure to give the defendant's attorney notice of the time and place of the people's psychiatric examination of defendant, ordered by the court, was not error where the court authorized the examination in the presence of the defendant's counsel and where, at the time of the authorization, the court informed the defendant's attorney that he could attend the examination if he wished.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 February 3, 1970, at Lansing. (Docket No. 6,882.) Decided July 28, 1970.

John Early was convicted of assault with intent to commit great bodily harm less than the crime of murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, *Dennis Donohue,* Chief Appellate Counsel, and *Edward Sosnick,* Assistant Prosecuting Attorney, for the people.

*Allen C. Ingle,* for defendant on appeal.

Before: Lesinski, C. J., and McGregor and V. J. Brennan, JJ.

V. J. Brennan, J. Defendant John Early was convicted by a jury on February 8, 1968, of assault with intent to commit great bodily harm less than the crime of murder, MCLA § 750.84 (Stat Ann 1962 Rev § 28.279), and was sentenced to a term of 3 to 10 years. His defense at trial was insanity.

He now appeals as of right, contending (1) that the information should have been quashed because the transcript of the preliminary examination was not contemporaneously filed with it, (2) that a psychiatric examination conducted by the people upon a plea of insanity *per se.* violates an accused's right against self-incrimination, and (3) that the trial court erred by not giving his counsel notice of the time and place of the psychiatric examination conducted by the people. We find these contentions to be without merit, and affirm.

Access to the transcript of testimony taken at a preliminary examination is important to the proper preparation of an accused's defense at trial, and therefore the transcript should be filed in the trial court at the same time the information is filed. *Dimmers* v. *Hillsdale Circuit Judge* (1939), 289 Mich 482.* Under *Dimmers* a motion to quash is proper if the transcript is yet unfiled. An untimely filing of the transcript cannot, however, be regarded as reversible error in the absence of a showing of prejudice. MCLA § 769.26 (Stat Ann 1954 Rev § 28.1096). The transcript in the instant case was filed on January 4, 1968, more than a month before the trial commenced, and was in fact used to prepare pretrial motions. A motion to quash was not made until January 29, 1968, nearly a month after the transcript was filed and therefore at a time when a continuance, as opposed to quashing the information, would have been the proper remedy upon a showing of prejudice. Defendant did not, however, allege prejudice in his motion. In the absence of any prejudice, we find no error in the court's denial of his motion.

---

* Of course, a transcript need not be filed with the information if its production is waived.

Defendant's second contention, which is made without any citation to case authority, is aptly answered by the Supreme Court of New Jersey in *State* v. *Whitlow* (1965), 45 NJ 3 (210 A2d 763):

"It would be most anomalous to say that a defendant may advance the defense of insanity, have himself examined by his own experts and then invoke the constitutional guarantees against self-incrimination for the purpose of preventing examination by the state. *State* v. *Myers* (1951), 220 SC 309 (67 SE2d 506, 32 ALR2d 430). It would be a strange doctrine, indeed, to permit a person charged with crime to put in issue his want of mental capacity to commit it, and in order to make his plea invulnerable, prevent all inquiry into his mental state or condition. *State* v. *Cerar* (1922), 60 Utah 208 (207 P 597, 602). To allow the accused to obtain his own expert, and after a private and unlimited conference with him and examination by him, to plead insanity and then put forward the privilege against self-incrimination to frustrate like activities by the prosecution is to balance the competing interests unfairly and disproportionately against the public." (210 A2d, at 767)

The testimony of the people's psychiatrist in the instant case was limited to the issue of the defendant's sanity and did not extend to the issue of his guilt in fact. This limitation was clearly defined on the record by both the prosecutor and the trial court:

"*Mr. Schmidt:* Your Honor, I think this just goes to the facts and information the psychiatrist needed to form an opinion on the question of sanity or, lack thereof. I don't believe the testimony would be used or admissible as direct testimony as to what took place. There are statements of the defendant we certainly have no intention to use anything in that

regard. It will be used strictly as a basis for the doctor's opinion.

"*The Court:* Of course, this is very true and this is understood, I'm sure that the prosecutor would insure that the psychiatric testimony proposed to be given would be only as to what opinion, if any, the psychiatrist had as to the mental condition of this defendant at the time of the offense. Certainly any mention by the psychiatrist as to his alleged participation in this crime would be automatically a mistrial."

The court acted well within its authority by authorizing a psychiatric examination by the people in the first instance, and was correct in restricting the testimony to the issue of the defendant's sanity.

Defendant's third contention assumes that he was entitled to the presence of counsel during the examination, an assumption, our research discloses, that has not been authoritatively discussed by the courts of our state. In the absence of any Michigan authority, we adopt the well-reasoned conclusion of the New Jersey Supreme Court in *Whitlow, supra,* that one does have a right to the presence of counsel at a psychiatric examination conducted for purposes of rebuttal to a plea of insanity, but that the right is a limited one, to be exercised upon request and only with the discretionary approval of the court:

"Having in mind the nature of psychiatric examinations, the usual necessity for an extensive interview between the doctors and defendant, and the safeguards now established against use of possible inculpatory statements of the accused as substantive evidence of guilt, we see no absolute duty on the trial court to permit the defense attorney to be present with his client; the matter rests in the court's discretion. If upon application by the state for leave to examine, defense counsel requests permission to be present at the examination, the court

should require some showing by the prosecutor as to the attitude of the psychiatrists about the presence of counsel. Of course, if there is no objection, permission should be granted. (In such case, counsel should realize his attendance is in the capacity of an observer, not an active participant.) If, in their view the presence of such a nonprofessional would hinder or operate to reduce the effectiveness of their examination, or if they assert they cannot examine in his presence, the court may in the exercise of its discretion exclude counsel from the examination. In this event, if defendant requests, consideration may be given to the feasibility of permitting such devices as recording instruments or the like to be utilized at the psychiatric interview." (210 A2d, at 776)

While we agree with these guidelines, we find no error on the record before us. The court authorized the psychiatric examination by the people in the presence of defense counsel and informed counsel at the time that he could attend the examination if he wished. No request was made. Defendant cannot now be heard to complain that he was not given notice of the time and place.

Affirmed.

All concurred.